**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LARONZO M. THOMAS,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 3322 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| **CAROLYN W. COLVIN,**[1] Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Laronzo Thomas, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). 42 U.S.C. § 1382c(a)(3)(A). Mr. Thomas asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**
**PROCEDURAL HISTORY**

Mr. Thomas applied for SSI on April 10, 2009, alleging that he had become disabled on April 1, 2008, due to a learning disability and asthma. (Administrative Record ("R.") 205-207, 217). His application was denied initially and upon reconsideration. (R. 105-110, 113-116). Mr. Thomas continued pursuit of his claim by filing a timely request for a hearing. (R. 117-119).

An administrative law judge ("ALJ") convened two hearings, the first on October 1, 2010,

---

[1] Pursuant to Federal Rules of Civil Procedure 25(d), we have substituted Carolyn W. Colvin for Michael J. Astrue as the appellee.

and the second on June 10, 2011. At the first, Mr. Thomas appeared and testified, and was represented by counsel. Dr. Larry Kravitz testified as a medical expert, and Thomas Dunleavy testified as a vocational expert. Mr. Thomas's sister also provided some testimony. (R. 65-104). At the second, there was additional testimony from a medical expert, Dr. Oberlander, and a vocational expert, Dr. Hamersma. (R. 37-63).

On November 3, 2011, the ALJ issued a decision finding that Mr. Thomas was not disabled and not entitled to SSI because he retained the capacity to perform any exertional level of work that consisted of simple, routine tasks, accommodated for a mild limitation in concentration by allowing him to be off task for 5% of the workday, involved no more than brief contact with co-workers and no more than incidental contact with the public. (R. 10-27). This became the final decision of the Commissioner when the Appeals Council denied Mr. Thomas's request for review of the decision on March 5, 2013. (R. 1-5). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. Thomas has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.
## THE EVIDENCE

### A.
### The Vocational Evidence

Mr. Thomas was born on April 15, 1979, making him thirty-two years old at the time of the ALJ's decision. (R. 205). He was thrown out of high school for fighting during the tenth grade. (R. 70). Prior to that, he was in special education classes, generally got horrible grades, and was habitually absent or tardy. (R. 92, 260, 265-268, 320-325). There were indications from teachers that

he was not trying. (R. 325, 326). The record suggests he very briefly held jobs in 2000 and 2005. (R. 210), although he claims he has never worked and does not recall ever looking for work. (R. 38, 75, 217). Other than that, he seems to have occupied himself with crime. He has done two stints in prison, from July 2003 through October 2004, and from May 2006 through May 2007. (R. 343). He has served time for selling crack cocaine and committing aggravated robbery. (R. 51-53, 373, 390).

**B.**
**The Medical Evidence**

We dispense with a tedious, lengthy recitation of evidence because this case turns on legal issues. That being said, the medical evidence in this case is a bit scant. A lot of it consists of grammar school and high school records for the thirty-two-year-old claimant. Those records, as already noted, certainly show that Mr. Thomas wasn't performing very well at all, but also show he wasn't showing up regularly or applying himself. (R. 92, 260, 265-268, 320-326). There are also some IQ tests. A full scale IQ score of 69 in 1997 showed Mr. Thomas was mildly retarded (R. , while more recent tests during his application process resulted in much lower scores showing he was retarded. (R. 320, 323). Doctors examining Mr. Thomas and reviewing the record suspected these more recent test were not valid and Mr. Thomas had been "tanking" them. (R. 93-99, 295-96). Importantly, when Mr. Thomas was assessed for placement in the prison population, his interview was such that the psychologist determined him to be of below average intelligence and noted he exhibited logical and goal-oriented thinking. (R. 373).

Moreover, throughout the record there are a number of inconsistencies in Mr. Thomas's statements. For example, he and his sister claim he is unable to leave the house without her or his

3

mother. But he has been reported to be out on his own by neighbors and has no trouble going out to sell drugs or commit robbery. Mr. Thomas told the ALJ at the hearing that he tried to get his GED in prison but failed more than once. (R. 74). Yet, when entering prison in 2003, he claimed he had already completed his GED. (R. 373). He also told the prison intake psychologist that he never got into fights in high school (R. 373). But at the hearing, he told the ALJ that he was kicked out of school for fighting. (R. 70). He claimed he got arrested because he was with a group of friends and didn't know what happened. (R. 73). That seems an unlikely scenario given that the charge of aggravated robbery requires a threat of armed violence. 720 ILCS 5/18-1. At the hearing, Mr. Thomas claimed he didn't miss a lot of school before he was expelled (R. 75) but, as already noted, his record demonstrates that he was absent a great deal.

The examples go on, but suffice it to say that Mr. Thomas is not a credible claimant. And there does appear to be substantial evidence – certainly more than a scintilla – to suggest that he has the intellectual capacity to perform some kind of work. The problem here, unfortunately is with the Seventh Circuit's logical bridge requirement and the manner in which the ALJ went about explaining his conclusion that Mr. Thomas is not disabled in his decision.

### C.
### The ALJ's Decision

The ALJ found that Mr. Thomas suffered from the following severe impairments: organic brain disorder, learning disorder, and antisocial personality disorder. (R. 12). The ALJ next determined that his impairments did not meet any listing, specifically listings 12.02, 12.05, and 12.08. (R. 12). Mr. Thomas did not meet the criteria of those listings because he did not have marked limitations in two areas of functioning. The ALJ determined that he had only mild

4

restrictions in daily living, moderate difficulties in social functioning, and *moderate* difficulties in concentration, persistence, and pace. (R. 12-13).

The ALJ went on to find that Mr. Thomas retained the capacity to perform all exertional levels of work, as long as it consisted of simple, routine tasks, accommodated for a *mild* limitation in concentration by allowing him to be off task for 5% of the workday, involved no more than brief contact with co-workers, and no more than incidental contact with the public. (R. 14). The ALJ summarized the allegations regarding Mr. Thomas's limitations, and then said that his impairment "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 15). The ALJ then discussed the evidence, but it was unclear how the ALJ got from the moderate limitation in concentration, persistence, and pace he found Mr. Thomas had at step three, to the only mild limitation he found he had in his residual functional capacity finding. He said he assigned great weight to the state agency consultants who determined that Mr. Thomas had *moderate* limitations in concentration, persistence, and pace. (R. 20). The ALJ also noted a number of inconsistencies in Mr. Thomas's statements about his limitations. For example, he claimed he never went anywhere without his sister, but neighbors reported otherwise, and he had been arrested since his alleged onset date. (R. 16). He claimed he was unable to speak so as to be understood, but this was not the case at the hearing or in several interviews. (R. 15). A number of his IQ tests were called into question by doctors. It seemed likely that he had deliberately performed below his capabilities on at least a couple of them. (R. 19, 22-23). Valid assessments revealed he was only mildly mentally retarded or of below average intelligence. (R. 17-19).

Finally, the ALJ summarized the vocational expert's testimony that a person with Mr. Thomas's limitations could perform a number of jobs – like cleaner/housekeeper, hand packager, or assembler – that existed in significant numbers in the regional economies. (R. 276-27). The ALJ accepted this testimony, and relied upon it to find Mr. Thomas not disabled and not entitled to benefits under the Act. (R. 27).

## III.
## DISCUSSION

### A.
### Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger*, 516 F.3d at 544. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is

required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Kujawski v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

## B.
## The Five-Step Sequential Analysis

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

   1) is the plaintiff currently unemployed;

   2) does the plaintiff have a severe impairment;

   3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

   4) is the plaintiff unable to perform his past relevant work; and

   5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not

disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir. 1997).

## C.

### Analysis

In *Sarchet*, the Seventh Circuit held that a reviewing court "cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." 78 F.3d at 307. Here, the ALJ initially found that Mr. Thomas had a *moderate* restriction on his concentration, persistence, and pace. Later in his opinion, however, he said the restriction was merely *mild* and would take Mr. Thomas off task for no more than 5% of a workday. The evidence he cited supporting this *mild* restriction actually indicated Mr. Thomas's restriction was, as the ALJ earlier had found, *moderate*. Moreover, that same evidence suggested that Mr. Thomas's productivity and efficiency may be compromised (R. 299), suggesting more than a few minutes off task here and there. Of course, that evidence also allowed that Mr. Thomas could still do simple repetitive tasks. (R. 299). But, still, this is an occasion where the ALJ's path of reasoning cannot be traced – there is no logical bridge between the evidence and the ALJ's conclusion. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).

The Commissioner argues that the error was harmless because even though the ALJ used the term "mild" when the evidence he cited said "moderate", he adopted that same report's finding that Mr. Thomas could perform simple, routine tasks. The limitation to simple, routine tasks, however,

is a result of Mr. Thomas's limited intelligence, not his limited concentration. Someone of limited intelligence may well be able to perform a simple job with no difficulty, while someone of average intelligence but with limited concentration may not. Imagine lids coming down a conveyor belt one after another, and they need to be placed on a supply of boxes. Limited intelligence would not be a hindrance in performing such a job, but limited concentration, persistence, or pace certainly would. Compromised productivity (R. 299) would be an issue. *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009)(restricting an individual to simple, routine work does not adequately account for limitations in concentration); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)("In most cases . . . , employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace.").

The ALJ, himself, seemed to grasp this distinction, because, at the hearing, he asked the vocational expert to accommodate Mr. Thomas's "mild" impairment in concentration, persistence, and pace with an allowance of 5% off-task time per workday:

> Let's assume this hypothetical person is able to maintain concentration, persistence and pace with a mild limitation. I'm going to peg that as a residual of 95% of the workday residual. [sic]

(R. 59).

So, the question remains whether, given a moderate limitation in concentration, Mr. Thomas could perform the jobs that the VE cited. The VE indicated that, at most, a person could be off task for 12% of the day. (R. 62). We don't know if a moderate deficiency in concentration, persistence, and pace would be greater than that. As a result, this is not a case where "we can predict with great confidence that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707-08

9

(7th Cir. 2013); *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

## CONCLUSION

The plaintiff's memorandum request for remand [Dkt. #19] is GRANTED and the defendant's motion for summary judgment [Dkt. # 27] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/15/14